1

2

3

4

5

6

7

8          **IN THE UNITED STATES DISTRICT COURT**

9         **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   RYAN BIGOSKI-ODOM,                    No. 2:12-CV-0197-KJM-CMK-P

12          Plaintiff,

13      vs.                          <u>FINDINGS AND RECOMMENDATIONS</u>

14   JAMES FIRMAN, et al.,

15          Defendants.

16   _____/

17          Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18   42 U.S.C. § 1983.  Pending before the court is defendant Jessie Jeffrey's[1] unopposed motion for

19   summary judgment (Doc. 41).

20          This matter is back before the undersigned following the District Judge's March

21   30, 2015, order.  In that order, the court noted:

22                   This matter is before the court on defendants' June 30,
            2014, motion for summary judgment, which the magistrate judge correctly
23          finds has not been opposed by plaintiff.  In her objections, plaintiff states
            that she never received a copy of the motion for summary judgment and
24          that she would have opposed the motion had she received it.  The proof of
            service appended to defendants' motion for summary judgment states that
25

26          [1]      Erroneously named as "Mrs. Jessie."

                                          1

1     the motion was served on plaintiff on June 30, 2014, at the following
      address:

2
                  Ryan Bigoski Odom
3                 223972
                  Central California Women's Facility (1508)
4                 P.O. Box 1508
                  Chowchilla, CA 93610-1508
5

6     ECF No. 33-5.
                  A docket entry in this action on July 21, 2014, shows that a
7     court order served on plaintiff on June 18, 2014, at the identical address
      was returned as undeliverable as addressed because the name and CDC
      number did not match.  On July 22, 2014, the order was subsequently
8     reserved on plaintiff at the same address using the CDC number WE7977.
      The latter CDC number is on the notice of change of address previously
9     filed by plaintiff on November 25, 2013.  ECF No. 29.  These facts
      support plaintiff's assertion that she did not receive defendants' summary
10    judgment motion.  For that reason, the current motion will be denied
      without prejudice to its renewal accompanied by proof that it has been
11    properly served on plaintiff.

12    Defendant Jessie re-filed her motion for summary judgment on May 11, 2015.  The proof of

13    service provided with the re-filed motion indicates that the motion was served on plaintiff at the

14    address provided in the November 25, 2013, notice of change of address and included CDC

15    number WE7977.   Despite proper service, plaintiff has not filed any response to the re-filed

16    motion for summary judgment.

17                  As to non-moving defendant James Firman, who remains unserved, the District

18    Judge stated as follows in the March 30, 3015, order:

19                      The magistrate judge correctly observes that defendant Dr.
                  James Firman has not yet been served with process and recommends
20                dismissal of this defendant pursuant to Federal Rule of Civil Procedure
                  4(m) for failure to timely effect service of process.  In the objections,
21                plaintiff presents an address for service on defendant Firman. . . .

22    The matter was referred back by the District Judge for further orders regarding service of process.

23    By separate order issued herewith, the court will direct plaintiff to submit documents necessary

24    for service on defendant Firman at the address indicated in the objections.

25    / / /

26    / / /

                                           2

1      **I. BACKGROUND**

2      A.      **Plaintiff's Allegations**

3             Plaintiff names the following as defendants: (1) Jessie, physician's assistant; and

4      (2) Firman, physician.  Plaintiff claims that, from June 2011 through November 2011 she[2] was

5      not provided her HIV/AIDS medications.  She adds that, "per Mrs. Jessie . . . as well as Dr.

6      James Firman," she was supposed to be seen by an outside HIV/AIDS specialist because the jail

7      lacked sufficient "staff that are knowledgeable about my disease."  Plaintiff also claims that she

8      was placed in the general jail population by defendant Firman despite her known serious illness

9      and that this presented a risk to her health due to her compromised immune system.  Plaintiff

10     alleges that defendants are responsible because "they are the people in charge of medications and

11     treatments."  As to the delay in receiving her HIV/AIDS medications, plaintiff claims that

12     defendants "did nothing to hurry the process. . . ."  She claims that there should have been no

13     delay because she arrived at the jail with all her prescribed medications.  Plaintiff claims that her

14     health deteriorated during the period from June through November 2011 when she was without

15     her HIV/AIDS medications.

16     B.      **Defendant's Evidence**

17            Defendant outlines the following facts as undisputed:

18            1.      Upon arrival at the Solano County Jail in June 2011, plaintiff indicated
                       that he had undergone laparoscopic gall bladder surgery and had a
19                     diagnosis of HIV/AIDS;

20            2.      Upon arrival at the Solano County Jail, plaintiff complained of nausea and
                       vomiting and was found to have a distended bowel;
21
22            3.      Plaintiff was seen by a jail doctor and placed on a liquid diet and
                       medication provided by Kaiser before plaintiff entered the jail was
23                     continued;

24            4.      Due to continued vomiting, abdominal pain, and an inability to keep his
                       medications down, plaintiff was referred back to Kaiser by Dr. Firman on
25                     June 25, 2011;

26     [2]      Plaintiff lists her title as "Ms."  The court will therefore use feminine pronouns.

5.   Upon plaintiff's return to the jail on June 28, 2011, plaintiff reported persistent stomach pain and pain on taking fluids;

6.   Plaintiff was seen by Dr. Firman on June 28, 2011;

7.   On June 28, 2011, Dr. Firman discussed plaintiff's condition, including pancreatitis and sepsis, and the discontinuation of plaintiff's HIV/AIDS medications due to the pancreatitis, with the Kaiser gastroenterologist;

8.   Following this discussion, Dr. Firman continued certain medications, but discontinued plaintiff's HIV/AIDS medications pending resolution of plaintiff's pancreatitis;

9.   On July 7, 2011, due to plaintiff's reports of renewed abdominal pain, plaintiff was provided medication by defendant Jeffrey and scheduled to see the jail physician;

10.   In September 2011, Kaiser reported that they were no longer covering the monitoring of plaintiff's HIV/AIDS status, and plaintiff was scheduled for a consultation with the Solano County Clinic;

11.   In October 2011, following plaintiff's renewed reports of abdominal pain, plaintiff was sent to the North Bay Medical Center for evaluation;

12.   Upon plaintiff's return from the North Bay Medical Center, plaintiff was housed in the jail infirmary and put on a liquid diet;

13.   Plaintiff's pancreatitis resolved in November 2011, at which time plaintiff's HIV/AIDS medications were restarted; and

14.   In December 2011, plaintiff was informed that her HIV/AIDS condition would be followed by Dr. Margaret Vincent at Sutter Health and, following a visit with plaintiff, Dr. Vincent reported that plaintiff's HIV/AIDS medication had been stopped from June through November 2011 due to plaintiff's pancreatitis.

Defendant's statement of undisputed facts is supported by the declarations of expert witness John Levin, M.D., and custodian of records Karina Purcell, R.N., as well as exhibits attached thereto.

## II.  STANDARDS FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

4

1   standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P.

2   56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One

3   of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.

4   See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

5   moving party

6   . . . always bears the initial responsibility of informing the district court of
    the basis for its motion, and identifying those portions of "the pleadings,

7   depositions, answers to interrogatories, and admissions on file, together
    with the affidavits, if any," which it believes demonstrate the absence of a

8   genuine issue of material fact.

9   Id., at 323 (quoting former Fed. R. Civ. P. 56©); see also Fed. R. Civ. P. 56(c)(1).

10

11   If the moving party meets its initial responsibility, the burden then shifts to the

12   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

13   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

14   establish the existence of this factual dispute, the opposing party may not rely upon the

15   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

16   form of affidavits, and/or admissible discovery material, in support of its contention that the

17   dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The

18   opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

19   affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

20   242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

21   (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury

22   could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433,

23   1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more

24   than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the

25   record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

26   there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is

1  sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the

2  parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

3          In resolving the summary judgment motion, the court examines the pleadings,

4  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

5  any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see

6  Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed

7  before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

8  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

9  produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen

10 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

11 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for

12 the judge, not whether there is literally no evidence, but whether there is any upon which a jury

13 could properly proceed to find a verdict for the party producing it, upon whom the onus of proof

14 is imposed." Anderson, 477 U.S. at 251.

15

16                              **III. DISCUSSION**

17          The treatment a prisoner receives in prison and the conditions under which the

18 prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

19 and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

20 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts

21 of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102

22 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v.

23 Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with

24 "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy,

25 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only

26 when two requirements are met: (1) objectively, the official's act or omission must be so serious

1   such that it results in the denial of the minimal civilized measure of life's necessities; and (2)

2   subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

3   inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

4   official must have a "sufficiently culpable mind."  See id.

5           Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

6   injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at

7   105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental

8   health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is

9   sufficiently serious if the failure to treat a prisoner's condition could result in further significant

10  injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d

11  1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

12  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition

13  is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

14  activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See

15  Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

16          The requirement of deliberate indifference is less stringent in medical needs cases

17  than in other Eighth Amendment contexts because the responsibility to provide inmates with

18  medical care does not generally conflict with competing penological concerns.  See McGuckin,

19  974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

20  decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

21  1989).  The complete denial of medical attention may constitute deliberate indifference.  See

22  Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

23  treatment, or interference with medical treatment, may also constitute deliberate indifference.

24  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also

25  demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

26  / / /

1    Negligence in diagnosing or treating a medical condition does not, however, give

2  rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a

3  difference of opinion between the prisoner and medical providers concerning the appropriate

4  course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh,

5  90 F.3d 330, 332 (9th Cir. 1996).

6    In her unopposed motion for summary judgment, defendant argues:

7    . . .The response in this case was proper and well founded based on
     the plaintiff's history and treatment at Kaiser both before the initial
8    incarceration and after the plaintiff had been sent back to Kaiser and then
     returned to the Solano County Jail.  Kaiser had withheld the plaintiff's
9    HIV/AIDS medications pending the resolution of the pancreatitis and
     defendant Jeffrey and the jail medical staff followed the same approach to
10   the case.
          In the instant case, defendant P.A. Jeffrey and her supervising
11   physician, Dr. Firman, withheld the HIV/AIDS medications that plaintiff
     could not keep in her stomach until the pancreatitis resolved and then
12   restarted the regimen as reflected in the note of Dr. Margaret Vincent.

13 As to the state-of-mind requirement, defendant argues:

14        There is no question that in addressing and assessing the various
     complaints by the plaintiff, defendant Jeffrey, under the supervision,
15   coordination, and direction of the jail physician, reviewed the pertinent
     record and contacted the involved providers to make sure that those
16   providers had considered, assessed, and evaluated the plaintiff's condition
     and had formulated medical plans and processes to address those issues.
17        In other words, the subjective state of mind of defendant Jeffrey
     was that plaintiff's complaints had been and would be addressed by the
18   medical staff as well as the specialized outside providers including the
     initial primary care providers following the plaintiff's HIV/AIDS
19   condition after those providers had diagnosed the HIV/AIDS condition
     prior to the plaintiff's incarceration at the Solano County Jail.

20

21 Finally, defendant states:

22        Plaintiff's condition was not ignored; treatment was provided in a
     manner deemed appropriate by those providers who had diagnosed the
23   condition in the first instance and that care was mirrored and extended by
     the medical staff at the jail including defendant Jeffrey.

24

25 / / /

26 / / /

8

1    Defendant Jeffrey's evidence, which is undisputed by plaintiff, shows limited

2  involvement in plaintiff's medical care.   Moreover, where defendant Jeffrey was involved, the

3  undisputed evidence shows that she provided plaintiff with medical treatment.   Specifically,

4  plaintiff was seen by defendant Jeffrey on July 7, 2011, in response to plaintiff's reported of

5  abdominal pain.  At that time, defendant Jeffrey provided plaintiff with medication for nausea

6  and placed her on the schedule to see a jail physician.  The evidence shows that, on August 11,

7  2011, defendant Jeffrey had a discussion with plaintiff concerning the results of lab tests received

8  on August 8, 2011; plaintiff was told that the tests results would be sent to Kaiser for review and

9  evaluation.  In September 2011, defendant Jeffrey made efforts to secure additional outside

10  consultation for plaintiff, such efforts resulting in a September 27, 2011, appointment at Solano

11  County Clinic.  On October 3, 2011, defendant Jeffrey responded to nursing staff observations

12  and plaintiff's reports of pain by seeing plaintiff and ordering another outside consultation.

13  Medical records show that, in October and November 2011 plaintiff was seen by defendant

14  Jeffrey to discuss her condition and that plaintiff was informed that recent testing to evaluate the

15  status of plaintiff's pancreatitis was still being evaluated by the outside specialists.

16    Throughout the timeline of events, the evidence shows that defendant Jeffrey

17  consistently responded to plaintiff's concerns and, for her part, followed the course of treatment

18  prescribed by the medical doctors, specifically the outside specialists.   Plaintiff has presented no

19  evidence whatsoever which would show any indifference by defendant Jeffrey, deliberate or

20  otherwise.   Based on the facts outlined in section I.B. as well as those outlined above, all of

21  which are undisputed by plaintiff, the court finds that plaintiff cannot prevail on her Eighth

22  Amendment claim and that defendant Jeffrey is entitled to summary judgment.

23  / / /

24  / / /

25  / / /

26  / / /

9

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.     Defendant's unopposed motion for summary judgment (Doc. 41) be granted; and

2.     Judgment be entered in favor of defendant Jeffrey.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  February 3, 2016

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE