**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RYAN BIGOSKI-ODOM, | No. 2:12-CV-0197-KJM-CMK-P |
| Plaintiff, | |
| vs. | <u>FINDINGS AND RECOMMENDATIONS</u> |
| JAMES FIRMAN, | |
| Defendant. | |

_____/

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendant's unopposed motion for summary judgment (Doc. 52).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# I.  BACKGROUND

## A.  Plaintiff's Allegations

Plaintiff claims that, from June 2011 through November 2011, while a pre-trial detainee, she[1] was not provided her HIV/AIDS medications.  She adds that, "per Mrs. Jessie . . . as well as Dr. James Firman," she was supposed to be seen by an outside HIV/AIDS specialist because the jail lacked sufficient "staff that are knowledgeable about my disease."  Plaintiff also claims that she was placed in the general jail population by defendant Firman despite her known serious illness and that this presented a risk to her health due to her compromised immune system.  Plaintiff alleges that defendants are responsible because "they are the people in charge of medications and treatments."  As to the delay in receiving her HIV/AIDS medications, plaintiff claims that defendants "did nothing to hurry the process. . . ."  She claims that there should have been no delay because she arrived at the jail with all her prescribed medications.  Plaintiff claims that her health deteriorated during the period from June through November 2011 when she was without her HIV/AIDS medications.

## B.  Defendant's Evidence

Defendant outlines the following facts as undisputed:

1.  Upon intake into the Solano County Jail on June 22, 2011, plaintiff indicated that she had undergone gall bladder surgery and had a diagnosis of HIV/AIDS prior to her discharge from Kaiser Hospital.

2.  Upon intake, plaintiff complained of nausea and vomiting and was found to have a distended bowel.

3.  Defendant Firman, a jail doctor, examined plaintiff the following day and placed plaintiff on a full liquid diet until plaintiff could be cleared for solid food.

4.  Due to the nausea, vomiting, abdominal pain, and an inability to keep her medications down, defendant Firman ordered plaintiff returned to Kaiser Hospital on June 25, 2011.

---

[1]  Plaintiff lists her title as "Ms."  The court will therefore use feminine pronouns.

5. At Kaiser Hospital, plaintiff's HIV/AIDS medications were discontinued due to pancreatitis.

6. Upon return to the jail on June 28, 2011, plaintiff reported persistent stomach pain and was seen by defendant Firman.

7. On the same day as his examination of plaintiff upon returning from the hospital, defendant Firman discussed plaintiff's condition with the gastroenterologist at Kaiser Hospital.

8. Defendant Firman decided to continue with medications designed to protect plaintiff from opportunistic injections and aid in supplementing pancreatic enzymes, but discontinue other medications pending improvement in the pancreatitis.

9. Plaintiff continued to suffer the effects of pancreatitis through November 2011 at which time plaintiff's HIV/AIDS medications were restarted.

Defendant's statement of undisputed fact is supported by the declarations of Karina Purcell, R.N., who is the custodian of records for the contract medical provider for the Solano County Jail, and John Lewis, M.D., a physician who is board certified in Emergency Medicine.

## II. STANDARDS FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987). To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

4

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

## III. DISCUSSION

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). This standard also applies to pre-trial detainees. See Peirce v. County of Orange, 526 F.3d 1190 (9th Cir. 2080); Johnson v. Meltzer, 134 F.3d 1393, 1398 (9th Cir. 1998) (stating that the Eighth Amendment establishes minimum standard of medical care for pre-trial detainees). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

In this case, the undisputed evidence establishes that plaintiff received timely healthcare from defendant Firman, that the temporary discontinuation of some of plaintiff's HIV/AIDS medications were ordered based on defendant Firman's medical judgment after examining plaintiff and discussing her case with the doctors at Kaiser Hospital. The evidence also shows that, when plaintiff's post-surgery complications resolved, her HIV/AIDS medications were continued. Based on this evidence, the court concludes that plaintiff cannot prevail on her Eighth Amendment claim to the extent it relates to the temporary discontinuation of her HIV/AIDS medication.

Plaintiff also claims that, despite his knowledge that plaintiff has HIV/AIDS and that plaintiff's HIV/AIDS medication had been discontinued, defendant Firman was deliberately indifferent when he ordered plaintiff returned to the general population. According to Dr. Levin's declaration, plaintiff reported on October 4, 2011, that she was no longer experiencing abdominal pain and that she was cleared for housing in the general population. On November 10, 2011, plaintiff discussed her viral load status with a physician's assistant and was told that a follow-up appointment with an infectious disease specialist was being coordinated. Plaintiff was also told that laboratory tests to determine had been ordered. Plaintiff's HIV/AIDS medications were resumed on November 18, 2011. Plaintiff was not seen by the infectious disease specialist until March 2012. Regarding plaintiff's transfer to the general population, Dr. Levin states that plaintiff was on medications which caused nausea, vomiting, and other side effects and adds: "It was prudent, then, for the patient to be covered by medications that provided protection from opportunistic infections (Dapsone) – thus making the transfer from the infirmary to general housing appropriate. . . ."

This evidence reflects that, prior to obtaining test result and specialist consultation regarding plaintiff's HIV/AIDS, and despite concerns of opportunistic infection, plaintiff was returned to the general population. Dr. Levin's statement that plaintiff's transfer to the general population was "appropriate" is unexplained. Specifically, the doctor provides no connection

7

between the side effects of medication discussed in his declaration and plaintiff's transfer to the general population. The doctor fails to answer why plaintiff was transferred to the general population despite concerns of opportunistic infection and in the absence of recent testing and specialist consultation. Defendant ignores this issue entirely in his motion for summary judgment.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that defendant's unopposed motion for summary judgment (Doc. 52) be granted in part as to plaintiff's Eighth Amendment claim based on the temporary discontinuation of HIV/AIDS medication and denied in part as to plaintiff's Eighth Amendment claim based on transfer to the general population.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

 DATED:  September 8, 2017

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE