IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN BIGOSKI-ODOM,<br><br>    Plaintiff,<br><br>  vs.<br><br>JAMES FIRMAN,<br><br>    Defendant.<br>_____/ | No. 2:12-CV-0197-KJM-CMK-P<br><br><u>AMENDED</u><br><u>FINDINGS AND RECOMMENDATIONS</u> |

      Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendant's unopposed motion for summary judgment (Doc. 52). The matter is before the undersigned following the District Judge's September 29, 2017, order.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1

# I. BACKGROUND

## A. Plaintiff's Allegations

This action proceeds on the third amended complaint. Plaintiff claims that, from June 2011 through November 2011, while a pre-trial detainee, she[1] was not provided her HIV/AIDS medications. She adds that, "per Mrs. Jessie . . . as well as Dr. James Firman," she was supposed to be seen by an outside HIV/AIDS specialist because the jail lacked sufficient "staff that are knowledgeable about my disease." Plaintiff also claims that she was placed in the general jail population by defendant Firman despite her known serious illness and that this presented a risk to her health due to her compromised immune system. Plaintiff alleges that defendants are responsible because "they are the people in charge of medications and treatments." As to the delay in receiving her HIV/AIDS medications, plaintiff claims that defendants "did nothing to hurry the process. . . ." She claims that there should have been no delay because she arrived at the jail with all her prescribed medications. Plaintiff claims that her health deteriorated during the period from June through November 2011 when she was without her HIV/AIDS medications.

## B. Defendant's Evidence

Defendant outlines the following facts as undisputed:

1. Upon intake into the Solano County Jail on June 22, 2011, plaintiff indicated that she had undergone gall bladder surgery and had a diagnosis of HIV/AIDS prior to her discharge from Kaiser Hospital.

2. Upon intake, plaintiff complained of nausea and vomiting and was found to have a distended bowel.

3. Defendant Firman, a jail doctor, examined plaintiff the following day and placed plaintiff on a full liquid diet until plaintiff could be cleared for solid food.

4. Due to the nausea, vomiting, abdominal pain, and an inability to keep her medications down, defendant Firman ordered plaintiff returned to Kaiser Hospital on June 25, 2011.

---

[1] Plaintiff lists her title as "Ms." The court will therefore use feminine pronouns.

2

1    5.  At Kaiser Hospital, plaintiff's HIV/AIDS medications were
         discontinued due to pancreatitis.

     6.  Upon return to the jail on June 28, 2011, plaintiff reported
         persistent stomach pain and was seen by defendant Firman.

     7.  On the same day as his examination of plaintiff upon returning
         from the hospital, defendant Firman discussed plaintiff's condition
         with the gastroenterologist at Kaiser Hospital.

     8.  Defendant Firman decided to continue with medications designed
         to protect plaintiff from opportunistic infections (Dapsone) and aid
         in supplementing pancreatic enzymes (Zen pep), but discontinue
         other medications pending improvement in the pancreatitis.

     9.  Plaintiff continued to suffer the effects of pancreatitis through
         November 2011 at which time plaintiff's HIV/AIDS medications
         were restarted.

Defendant's statement of undisputed facts ("SUF") is supported by the declarations of Karina Purcell, R.N., who is the custodian of records for the contract medical provider for the Solano County Jail, and John Lewis, M.D., a physician who is board certified in Emergency Medicine. Defendant did not submit his own declaration.

### C.  **Plaintiff's Evidence**

Plaintiff submitted no opposition to defendant's motion. Further, because plaintiff's third amended complaint is not signed under penalty of perjury, it does not serve as opposing evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).

## II. STANDARDS FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One

of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
>
> <u>Id.</u>, at 323 (quoting former Fed. R. Civ. P. 56(c)); <u>see also</u> Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  <u>See</u> Fed. R. Civ. P. 56(c)(1); <u>see also</u> <u>Matsushita</u>, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

### III. DISCUSSION

Plaintiff claims: (1) defendant was deliberately indifferent to her serious medical condition when he discontinued HIV/AIDS medication; and (2) defendant was deliberately indifferent to her serious medical condition when he transferred plaintiff to the general population.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). This standard also applies to pre-trial detainees. See Peirce v. County of Orange, 526 F.3d 1190 (9th Cir. 2080); Johnson v. Meltzer, 134 F.3d 1393, 1398 (9th Cir. 1998) (stating that the Eighth Amendment establishes minimum standard of medical care for pre-trial detainees). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).

Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See

Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference.  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

### A. Temporary Discontinuation of HIV/AIDS Medications

Plaintiff claims that defendant was deliberately indifferent with respect to the temporary discontinuation of her HIV/AIDS medications.  In this case, the undisputed evidence establishes that plaintiff received timely healthcare from defendant Firman.  Plaintiff reported to the Solano County Jail on June 22, 2011, as a pre-trial detainee after having undergone laparoscopic gall bladder surgery at Kaiser Hospital.  See Defendant's SUF No. 1; see Declaration of Dr. Levin, ¶¶ 4A, 4B, and 4C.  Upon arrival, plaintiff complained of nausea and vomiting.  See Defendant's SUF No. 2; see Declaration of Dr. Levin, ¶ 4C.  Plaintiff's bowel was distended and she was scheduled to be seen by defendant Firman.  See id.  Firman examined plaintiff the day after she was admitted to the jail to address her complaints of nausea and vomiting and placed plaintiff on a liquid diet.  See Defendant's SUF No. 3; see Declaration of Dr. Levin, ¶ 4D.

Due to continued nausea, vomiting, abdominal pain, and an inability to keep her medications down, defendant Firman ordered plaintiff returned to Kaiser Hospital on June 25, 2011.  See Defendant's SUF No. 6; see Declaration of Dr. Levin, ¶ 4H.  Because of pancreatitis, the doctors at Kaiser discontinued plaintiff's HIV/AIDS medications.  See Defendant's SUF No. 7; see Declaration of Dr. Levin, ¶ 4I.  Plaintiff was returned to the Solano County Jail on June 28,

2011.  See Defendant's SUF No. 6; see Declaration of Dr. Levin, ¶4H.  On this same day, Defendant Firman discussed plaintiff's condition with the gastroenterologist who had treated plaintiff at Kaiser.  See Defendant's SUF No. 7; see Declaration of Dr. Levin, ¶ 4I.  Upon return to the jail, plaintiff complained of persistent stomach pain and was scheduled to be seen again by defendant Firman.  See Defendant's SUF No. 6; see Declaration of Dr. Levin, ¶ 4I.  Based on his consultation with the specialist at Kaiser Hospital, defendant Firman decided to continue with medications designed to protect plaintiff from opportunistic infections (Dapsone) and aid in supplementing pancreatic enzymes (Zen pep), but agreed with the discontinuation of plaintiff's HIV/AIDS medication originally ordered by Kaiser pending improvement in plaintiff's pancreatitis.  See Defendant's SUF No. 8, see Declaration of Dr. Levin, ¶¶ 4J and 4O.  In October 2011, following new reports by plaintiff of abdominal pain, plaintiff was sent to the North Bay Medical Center for additional evaluation.  See Defendant's SUF No. 11; see Declaration of Dr. Levin, ¶ 4W.  Upon return to the jail, plaintiff was housed in the infirmary and placed on a liquid diet.  See id.  Plaintiff's pancreatitis resolved by November 2011.  See Defendant's SUF No. 9; see Declaration of Dr. Levin, ¶¶ 4P, 4W, and 4Z.  In November 2011, reports from recent blood work showed that plaintiff's pancreatitis had resolved and her HIV/AIDS medications were restored.  See Defendant's SUF No. 12; see Declaration of Dr. Levin, ¶ 4BB.

          Based on this evidence, which has not been disputed, the court concludes that plaintiff cannot prevail on her Eighth Amendment claim to the extent it relates to the discontinuation of her HIV/AIDS medication between June and November 2011 because defendant Firman was not deliberately indifferent to her medical conditions.  To the contrary, the undisputed evidence shows that he timely examined and treated plaintiff, that defendant Firman obtained advice from specialists, and that he followed that advice.  Moreover, the undisputed evidence shows that, even though plaintiff's HIV/AIDS-specific medications had been temporarily discontinued due to plaintiff's pancreatitis, Defendant Firman nonetheless provided

plaintiff with medications designed to prevent opportunistic infections. With respect to plaintiff's repeated complaints of abdominal pain, the undisputed evidence shows that plaintiff was treated for those complaints, including being sent to an outside specialist, being provided medication, and being placed on a liquid diet.

### B. Transfer to General Population

Plaintiff also claims that, despite his knowledge that plaintiff has HIV/AIDS and that plaintiff's HIV/AIDS medication had been discontinued, defendant Firman was deliberately indifferent when he ordered plaintiff transferred from the infirmary to the general population. According to Dr. Levin's declaration, plaintiff reported on October 4, 2011, that she was no longer experiencing abdominal pain. See Declaration of Dr. Levin, ¶ 4W; see Declaration of Custodian of Records Karina Purcell, Exs. 47, 48, 49, and 50. On November 10, 2011, plaintiff discussed her viral load status with a physician's assistant and was told that a follow-up appointment with an infectious disease specialist was being coordinated. See Declaration of Dr. Levin, ¶ 4AA; see Declaration of Custodian of Records Karina Purcell, Ex. 54. Plaintiff was also told that laboratory tests to determine viral loads had been ordered. See id. Plaintiff's HIV/AIDS medications were resumed on November 18, 2011. See Declaration of Dr. Levin, ¶ 4BB; see Declaration of Custodian of Record Karina Purcell, Exs. 55 and 57. On Follow-up examination the day plaintiff's HIV/AIDS medications were resumed, plaintiff reported that she was "fine." See Declaration of Dr. Levin, ¶ 4BB; see Declaration of Custodian of Records Karina Purcell, Ex. 58.

While the evidence is not clear on the exact timing of plaintiff's placement in the infirmary as opposed to the general population, plaintiff claims that "on July 6, 2011, I was placed out of the jail infirmary into the general population. . . ." See Third Amended Complaint, p. 4. Defendant's statement of undisputed facts indicates that plaintiff was returned from a consultation at Kaiser on June 28, 2011. See Defendant's SUF No. 6; see Declaration of Dr. Levin, ¶4H. In October 2011 plaintiff was sent to the North Bay Medical Center for additional

evaluation.  See Defendant's SUF No. 11; see Declaration of Dr. Levin, ¶ 4W.  Upon return to the jail, plaintiff was housed in the infirmary and placed on a liquid diet.  See id.  Thus, it appears that plaintiff was housed in the general population for some period of time between her return from Kaiser on June 28, 2011, and being sent to the North Bay Medical Clinic in October 2011.

The undisputed evidence shows that, during this time period, plaintiff had been provided medication designed to protect against opportunistic infections.  See Defendant's SUF No. 8, see Declaration of Dr. Levin, ¶¶ 4J and 4O.  Regarding plaintiff's transfer to the general population, Dr. Levin opines: "It was prudent, then, for the patient to be covered by medications that provided protection from opportunistic infections (Dapsone) – thus making the transfer from the infirmary to general housing appropriate. . . ."[2]  Plaintiff has not provided any evidence to dispute Dr. Levin's opinion.

///
///
///
///
///
///
///
///
///

---

[2] In the original findings and recommendations, the court stated that Dr. Levin's declaration failed to meet defendant's burden on summary judgment because "[t]he doctor fails to answer why plaintiff was transferred to the general population despite concerns of opportunistic infection. . . ."  Defendant explains that Dr. Levin believed that the danger of opportunistic infection was "covered" by Dapsone and that because this danger was "covered," it was appropriate for plaintiff to be returned to the general population.  The court accepts this explanation and concludes that defendant was not deliberately indifferent to the risk of infection when he ordered plaintiff returned to the general population.  Again, the court notes that plaintiff has not filed an opposition to defendant's evidence which is, thus, undisputed.

10

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that defendant's unopposed motion for summary judgment (Doc. 52) be granted.

These amended findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 1, 2017

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE